All right, Mr. Jenks, if you're ready, we'll begin. The Chief Judge will join us in a minute. Okay. Thank you, Your Honor. The issue in this case is one of claim construction, and in particular, the term memory device, and whether it can encompass the memory module in the IAPX reference. The examiner here construed memory device as any device that allows storage and retrieval of information. This would allow the memory device in the claims to cover multiple devices, including non-memory devices such as memory controllers. This construction, which was affirmed by the Board, is too broad. It's inconsistent with the intrinsic evidence, the specification, and for that reason, the Board's decision should be reversed. Are you arguing that the applicant acted as a lexicographer and redefined what memory device means, or are you arguing that there's been a disavowal, or both? Your Honor, I don't think we need either of those, actually. I think this is based on the usage of the term and the specification. It's not one where we're being our own lexicographer, because it's consistent with the plain meaning of the term, memory device. Every place that it's used in the specification, it refers to a single device, so we're relying on the usage. I don't think you have to look for something like an express disavowal, because we're not using the term inconsistently with its plain meaning, but from that usage, which is consistent throughout the specification, there's no instance where the term memory device is describing multiple devices. I think that answers the question. Now, where the Board went wrong here is on this other embodiment that involves a transceiver and multiple devices. It said it's sometimes called a memory stick. It's a circuit board that contains multiple memory devices. So you're saying that memory device could have a broader meaning, but that we should interpret it in a narrower way because of the supposed consistent usage in the spec of limiting it to a single chip? Your Honor, I don't think we have to concede that it could have a broader meaning. It may in some other context that's not present here. In the context of the plain meaning and the specification here, it means only one thing, and that's a single device. I really like Judge Ron White's language here when he says, you could have claimed a memory chip, but you claimed a memory device, and you have to live with the claims you wrote. So he suggests it's more than a chip. He does. Not a single chip, it is, as he goes on to say, a component in a larger context. That's right. Now, we think that the specification is clear that it is a single chip, and so with that we do disagree, but there's a lot he got right. He does say it's on the order of a single chip, and that it excludes a memory controller. He does say that, and he goes on to say it doesn't have a controller. That's right. And either of those would exclude the IIPX prior art. Can I go to the controller aspect? Can a memory device function without any control logic at all? I don't believe it can, but that's different than a controller. A memory controller is a well understood device. It's an integrated circuit device that controls the actions of the memory device. Now, when you say control logic, generally a memory device, or any device, needs some control logic. You have to find the address. You have to synchronize with the clock cycle. Exactly. That's not what we're talking about here. The various controller functions, which would include bus arbitration, queuing, fault tolerance, those are the kinds of things that direct the actions of the memory controller. And you need that in the system, but it's not part of the memory device. What we have here in this invention is a method of operating a synchronous memory device that has certain functions. Namely, you can read blocks of data from a single device. That's the object of the invention, which is captured in these claims. Now, there are other objects of the invention. There are other inventions that are described. But that is the one that is captured by these claims, which is reading a block of data from a synchronous device. But even the expression, reading a block of data from a single device, doesn't necessarily foreclose that single device from having multiple chips, does it? In the context of this invention, it really does, Your Honor, because that is the object of it, is that a single row address goes to a single device, and then it reads out a block of data from that. And it also talks about power dissipation as being an advantage of the invention. If you're addressing multiple chips simultaneously, or in sequences, which the prior art had to do to address a block of data, to retrieve a block of data, you had to address all the chips. And that's really the advantage here, is you can address a single chip and get a block of data. You can do that for each chip, or if there's one chip, and that is a distinguishing feature from the prior art. Would there be no way of connecting two chips to function the way that Patton describes the function? Well, there are. You can have multiple chips. Connect all the rows together in multiple chips? You know, I don't think that's contemplated. I'm not sure if the device that's described here, whether you could connect it in some alternative way. What it does say is, from this device, you can read a block of data, and that is a memory device, and described as a single chip. It says single device, it says single memory device, where it says chip, it's describing a single memory device, where it uses the word in the specification, and that's consistent with the object of the invention. If you prevail on either the controller or the single chip, there's no anticipation, is that correct? That's right.  Could I get back to the controller issue for a moment? As I understand it, the dispute here relates to the IPAX, or IXPA, we all know, embodiment in its Intel manual. That's right. But the difference between you and the other side seems to be that you are saying that this memory controller in that earlier art performs functions other than those within the claims here. And so it seems to me the real issue is whether this being a comprising claim, the fact that the memory controller performs these other functions in the prior art device means that it doesn't anticipate. Is that a fair statement of what the dispute is with respect to the controller? I think it's actually more than that. If you look at this module, this memory module in the IAPX prior art, it includes multiple devices that are controlled by a memory control unit. Now that memory control unit does provide much more in the way of functionality than we have specified in our claims, which is reading lots of data. Okay, but accepting that, then the PTO's argument is, well, so what? Because it's a comprising claim and the fact that this memory controller performs this additional functionality is irrelevant, right? I mean, that's what their argument is. I think that may be their argument, but if you go to our construction of memory device, which excludes a memory controller, much as Judge White said in his construction, it would exclude all that extra functionality being pointed onto the device. Why does it exclude the extra functionality, given the fact that it's a comprising claim? Well, by the definition of memory device, if it says, if a memory device is something that does not include a controller, I think that that would preclude adding those extra things to it, even though it is a comprising claim, because then it would no longer be a memory device, and I think that's what Judge White's construction was as well. Now, where I think the board went wrong here is focusing on this transceiver embodiment, this memory stick, and saying that that's the same as a memory device. It's clearly not. Memory devices are components of that embodiment, and what the specification says is that the teachings of the invention can be practiced using that embodiment, which of course they can, because they have the claimed memory chips, and each single memory chip can still read a block of data, whether that's connected to a transceiver or not. It doesn't transform that circuit board into a memory device. Now, is the BIU and the Jackson Prior Artic controller? Yes, it is. Yes. Why is it a controller? It does... Well, it's a bus interface unit that controls the actions of the memory device. There's also a memory controller in the other IAPX Prior Artic. This Prior Artic is all sort of related. It all relates to an Intel project, but some of it is described differently. For example, there's one reference where the MCU is not part of the memory module, but just looking at Jackson, the BIU was relied on for performing certain functions, and it does do those things. But there's still a memory control unit on the memory module or the memory board that is the memory controller. So whether or not you say one's a memory controller or one's not a memory controller, those functions are being performed. So when looking at the Jackson Prior Artic... Now, this prosecution history, I think, is consistent that memory device meant a single device. I don't think you can find an instance where it was describing multiple devices, and in most cases, those modules are often called out separately, saying a memory device or a memory module. And to me, that says they are something different. What was distinguished in Jackson was the fact that the memory module did not receive a clock signal, did not perform the functions. Now, if the examiner in that original prosecution had wanted to lump the bus interface unit into all that and call it a device, the claims would have been rejected, but they were allowed. And that's really the same argument that we're making here about the memory device, and I believe that's entirely consistent. But why is it that the specification here excludes having controller functions in the memory device? How do we know that to be the case? I think one way you can tell is the description between masters and slave devices. The functionality of a controller is like a master. The functionality of a memory device is like a slave. And because of that, it excludes that controller function. The controller functions that are described in the patent, they include things like bus arbitration, queuing, fault tolerance. Those are the kinds of things you find in a memory controller. And the memory device that is described doesn't have those things. But some memory control is required, is it not? I would say some control logic is required, sure. Some control logic is required. Of course, on the memory device, in order to be able to read a block size out, you have to have some control circuitry, not just the memory cells themselves. They don't work on their own. What do you say about the language in column 7, lines 19 to 22? Another unique aspect of this invention is that each memory device is a complete independent memory subsystem with all the functionality of a prior art memory board in a conventional backplane bus computer system. Doesn't that mean that the memory device includes not only the actual memory circuits, the chips, if you will, but also at least some sort of logic to facilitate the transfer of data in and out? There would have to be some logic, of course. And I think that is consistent with our claims. What I really think this section of column 7 shows is that a memory device is different than a memory module or a memory board. It's distinguishing it. It's saying, we have that functionality of a prior art memory board, but we're doing it on a single chip. So you can read a block of data from the single chip. So they're not equating them, they're saying they're different. And I think that's what the real import of that language in column 7 is. So what is the distinction between control logic and a controller? Well, the hallmarks of a controller, as we've said, are these various functions. It controls the actions of the memory, that's a general definition, but things like bus  is the heavily working implement that generates a lot of heat. You've got to have a heat sink for it, whereas the memory device is very different. Well, there may be. Now one of the things that's an advantage of this invention is you're reading a block from a single chip. You have less of a heat sink because you can put the memory devices off one way and the controller can be handled with a smaller heat sink. That's a potential as well. But as I was saying, the memory devices, you can read a block from each single device instead of reading a block from all of the devices. That also reduces the heat and the power dissipation as described in the specification. In this IAPX prior art, there is a separate bus interface unit, a separate controller. There is. There is. So what you have, according to you, is that separate controller plus some of the control function being performed by the MCU. Yes. But that MCU is a memory controller. It's described as such. So the bus interface unit and the memory control unit, they are both acting as controllers separate from the memory devices, and I'm not sure how you want to... Why is the MCU in the cited reference not simply performing those logic control functions that we were describing a minute ago? It does more than that, and I think what this does is you get into sort of an artificial line drawing between the BIU and the MCU. They're both performing controller functions, and neither one of them are part of the memory device, and I think that's really the point.  I believe they're described in the reference itself. In particular, the MCU is described... So the bus interface unit, 8457, and then the MCU on 8458, which talks about how it's... Some of the functions that are performed, including error correction. It does the refresh. It does... Is this under the memory bus heading? This is under the memory control unit on 8458. But it does all those things in addition to the control logic. That's right. It does. Mm-hmm. Are there any further questions? I'll take my rebuttal time. Thank you, Mr. Jakes. We will restore Mr. Jakes' rebuttal time, and if you'll give Mr. Kraus an additional four minutes, if he needs to use it, that'll keep the time pretty even. Thank you, Your Honor. May I please... One second. Let's get the time right as you start. There we go. You may proceed. Thank you, Your Honor. May it please the Court? I believe that Judge White got it exactly right when he said, in this case, Rambis picked the term device, a broad term, rather than the term chip, and has to live with it. This is not the typical claim construction case that gets... Judge White also said a memory device does not include a microprocessor, like a CPU, or a memory controller. Right. So if you're going to stick with Judge White, maybe you win on one, but you lose on the other. Well, he's not talking about a memory control unit by any means there. If you look at the diagram on page 8457 of the IAPX device, I think that kind of addresses this very nicely. I'll give you a second to get there. But what he's basically saying, as you said, a microprocessor, like a CPU, or a memory  device, that's the big picture device that controls the memory. When you look at a diagram like what you see on 8457, you see this memory module surrounded by the dotted lines, which does include a memory control unit and an array. It's our position that that is a device. That's a memory device, and there's nothing in the plain meaning, or ordinary and customary meaning, of a memory device that would somehow exclude that. So you're saying what Judge White was excluding were the references to the BIU in 8457. Essentially. And he got that straight out of the claim language. The claim language includes a bus controller limitation, which is a memory controller limitation. Rambis essentially makes that equation on page 24 of its brief. That's what Judge White was excluding. And we're not excluding that. We've got that memory controller in this claim. And what remains is that something that has memory meet the memory device limitation. And we say it does because the IAPX meets all the limitations, all the functional limitations that the claim imparts to a memory device. One thing struck me as a little bit unusual was the board's treatment of the memory stick as sort of an explanation or another reason why the memory device is more than just a chip. And the memory stick strikes me as being a completely different article. And the claim doesn't necessarily have to read on that. Well, I think what the board is saying is that the specification says that whenever you see the word memory device, this other thing, this memory stick, could work just as well. And the board points to something a little later where the specification talks about other devices that could be attached to the bus, which implies that the memory stick is a device, as is a memory chip. If you take Mr. Jake's position that a memory device is a single chip, then isn't all that saying that, well, you can either have a single chip or you can have a memory stick that has a bunch of single chips on it? Yes, if you take that starting point, and that's what he's asking you to decide, that a memory device is a single chip. But they've pointed us to no ordinary and customary meaning that would suggest that. The board pointed that out at age 32 to 33. All the expert testimony is simply, oh, I've read the specification. They use memory device to refer to a chip, which they do. But when a patent attorney uses the word device in a specification or a claim like that, which is exactly what's happened here. I guess my point is that it seems to me that the decision as to whether a memory device is a single chip or not may turn on a host of different things. But I'm not necessarily persuaded by the argument about the memory stick, which, if anything, confuses me. To be honest, if that memory stick embodiment were not in the specification, this would have been an even easier case for you. Because then you'd say, well, how does one define memory chip? What's an ordinary and customary meaning of that? You wouldn't find it from Rambus. You would look at the spec, you'll see the context. You'd say, okay, all the embodiments are the single chip. But that doesn't necessarily mean memory device itself has a single chip limitation. You need some kind of an understanding of somebody with ordinary skill in the art outside of the specification to get there. Otherwise, you need lexicography or you need a clear disavowal to get around that. So without the memory stick, I think it would be an easier case. But I do think the memory stick, in a way, makes the case stronger for us, as we explain in the brief, because the memory stick performs exactly the same function as the memory device does in the invention. And that simply goes to show that the invention need not be limited to a single chip. In fact, the memory stick is described as an embodiment of the invention. Mr. Krause, I'm a little more worried about the controller angle on this. And it seems to me that 918 patent speaks extensively of keeping the slaves simple and removing the intelligence to use the language in column 8. They seem to be clearly distancing themselves from the idea that there's intelligence, there's control on the memory device. As you yourself pointed out, and as Mr. Jase conceded at the oral argument before the board on page 83, 53, and 54 of the record, there is memory control logic within the memory device. That's a necessary aspect of the memory device. But that doesn't seem to address the question, because logic is, of course, necessary to find the correct address, keep the clock timing correct. But that's not what we're talking about here in a controller atmosphere, where you're refreshing and scrubbing errors and accepting variable link data, and things of that nature that controllers do. Yes, and those all would have been excellent limitations for Rambos to put into this claim to distinguish the term memory device. But we can't import those limitations from the specification into the claim absent some recognized meaning that that's what a memory device can be. We're interpreting memory device from the standpoint of a person of ordinary skill in the art. And a person of ordinary skill in the art, wouldn't they read this language on column 8? In fact, their expert, Murphy, says that,  Yes, but that's because Mr. Murphy starts off from the assumption that a memory device is a single chip. So he's going to exclude any extraneous chip that performs that same control function. Could I try to understand this a little better? Is it not clear that in the IAPX device at 8457, that the MCU performs functionality which is not required by the claim line? I think that is quite, that's our position, yes. Okay, so the question is whether the performance of that additional functionality means that it's not within the claim, right? I think that's right. And is your position that because there's a separate bus interface unit in the prior, or Intel device, that that means that the requirement of having a separate controller is satisfied, right? I think so, because again, from their brief on page 24, their best argument that a memory controller is something separate is the claim language itself, which refers to the bus controller. Once we've got that in the bus interface unit, all we need is something that satisfies the concept of a memory device, whether or not it has extra limitations or performs extra functions, doesn't matter, it's handled by the comprising claim. We just need a memory device that fits into that part of the claim, and this module in IAPX does that. Got a lot of time left. Okay. To me, that's self-evident. If I'm missing something, I'd be happy to discuss it further, but we've got a claim language which maps perfectly onto this IAPX device, and there's nothing in the IAPX that could somehow exclude these functions if the memory control unit has. And they're probably not that much different than the transceiver device that's in the memory stick that's described in the specification, and it wouldn't make sense for Rambus to try to limit itself, or if Rambus wanted to limit itself, it could simply exclude that kind of function, or exclude a multi-chip embodiment. Again, as Judge White said, if they wanted a single chip here, they could have simply said a single chip. That would have been the easiest way to define this. Another patent in the same family, the 644, makes a clear distinction between memory modules with controllers and memory devices. Would it be appropriate for us to look at that in this context? I don't think so. I mean, in Philips, we're really looking at the plain notice function of the Wouldn't this be, again, indicative of what one of skill in the art would understand? It would be, but then you could look in many other places. We cited the Mango soft case that used the word memory device and makes it clear that that can include other memory devices. I think if you're doing, and I think that's the appropriate inquiry, figure out what somebody with skill in the art in 1990 would have thought when you came up to them and said a memory device. I submit that that person would say that this person has not yet told me whether he's talking about a single chip or a module. If he wants to specify a single chip, he would say a memory chip. I agree that's what we're looking for, but if we find one space in the prosecution history which arguably lends support to one definition, that's not arriving at the ordinary and customary meaning by any stretch. And for that reason we should really stick, and I'll come back up, our brief points out how the prosecution history supports us in numerous ways, but I think that's totally aside from the fact that under Phillips the plain notice function of the claiming is the claim should be clear, and I think the claim clearly, it could have been clear if it said chip. It didn't do so. And then you can go to the specifications. Specification doesn't have the disavowal or the lexicography that we would need. And I assume this Court has in mind the case Thorner from last week. That case gives a very good tutorial on exactly how you're supposed to look at the specification when somebody's trying to read a limitation out of the plain language of a claim. The word there was attached, and the applicant, every place in the specification, used the word attached when they were talking about attaching something to the outside of a pad. They used the word embed when they were attaching something to the inside of a pad. But the Court said, well, the plain meaning of attached includes both of those embodiments, and there's nothing, no lexicography to redefine attached. There's no disavowal, disavowing that meaning of attached. Therefore, you're stuck with that broader definition. And that's the same thing that's happening here. They didn't disavow. There's no lexicography. A memory device is not limited to a single chip. A single chip is a single chip. Coming back to that point that Chief Judge Rader called your attention to, is your position as to that language that that goal of the invention is satisfied even if you have some controller function in the memory control unit, or is your position that that goal of the invention may not be satisfied by the Intel prior art, but that not every goal of the invention has to be satisfied? I think it's certainly a little bit of both. As a matter of fact, you can't simply point to one goal of the invention, especially here where RAMBA says we've got multiple inventions within this specification. You can't point to one object and then read that into the claim and say that's a limitation on a claim term as broad as memory device. And I would emphasize that they're talking about keeping it simple, but they're using the word slave devices. The master-slave relationship here is the BIU and the CPU in the master position where the memory module as a whole is performing the function as a slave in this claim. Again, if they want that object into the claims, that's something that could have been amended. They could have drafted claims that included those objects. They didn't do so. They should not be read into the claim. If there's no further questions in the floor. Thank you, Mr. Krause. Mr. Jakes, you have your rebuttal time. Thank you. If Judge White got it right, he rejected the PTO's construction on several grounds, not just on eliminating a memory controller, but also on the size. He says it's smaller than a memory board. A memory device is smaller than a memory board on the order of a single chip. That also excludes IAPX. We think the specification is clear that it is a chip and that he was improperly looking for words of limitation, but even so, if Judge White got it right, there's no anticipation. Now, the memory stick or the transceiver embodiment, it's not just another explanation for a memory device. It is the sole reason for the board's opinion. They say the issue is, does a memory device encompass a memory stick? And that decision is, that portion of the decision is clearly wrong. It does not equate those, and so I think the rest of the opinion actually falls apart. Now, the memory control unit... If the memory stick embodiment shown in the specification is within the claim, do you agree that the claim... Your Honor, it depends on what you mean by within the claim. Now, the claims call for a method of operating a single memory chip. You can put multiple chips on a memory stick, and each of those devices will fall within the claim. So I would say that it still covers that embodiment, it just covers it in a different way. It covers each individual chip that make up that memory stick. So it's not like we're excluding that embodiment completely. It's not directed... But in that embodiment, doesn't the chip, the stick itself, interact with the bus interface and meet all of the other limitations? I would have a hard time reading that claim to read on just one of the memory devices in the stick. Each of the chips will perform each of those functions. It operates synchronously with the memory control. It gets a read signal, it gets a block size, and it outputs a block of data. And those are the limitations that are required by the claim. So I think each of those memory devices would do that, in that sense, it does embody. But if we... And putting that argument aside, it is not within the claim, is your view? I don't think so, because I think each of the memory... I'm not sure I understand it. Well, if the stick embodiment is within the claims, putting aside your argument that the individual chips within that are within the claim, then doesn't the IAPX device anticipate? Let me see if I... Make sure I understand. If we're going to construe memory device to mean multiple chips, like the memory stick, then that does eliminate our distinction over the IAPX prior art, that's true. But that's really the issue. Does the memory device do that? We heard something about plain and ordinary meaning, customary meaning. The patent office didn't put anything in the record about plain meaning in this, other than concatenating two dictionary definitions, and that really is not right. We did cite at least the Rodin testimony, where he said typically, meaning ordinarily, memory device does not include multiple chips. And I'd just like to say as a last point, we're not trying to keep our options open by using the word memory device or using the word device. The word device in this specification was always used in the same way to refer to a single chip. It wasn't like we described a single chip and then came up with the word memory device to describe something broader. The word memory device appears in the specification as describing a single chip. We were not trying to keep our options open. Thank you, Mr. Shakespeare. That concludes our morning. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock a.m.